IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| RHONDA DURDEN,<br><br>               Plaintiff<br><br>       VS.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br><br>               Defendant | NO.  5:07-CV-423 (CWH)<br><br><br><br>PROCEEDING UNDER 42 U.S.C. § 405(g)<br>BEFORE THE U.S. MAGISTRATE JUDGE |

## ORDER TO REMAND

Plaintiff RHONDA DURDEN filed an application for a period of disability and disability insurance benefits on July 2, 2004. The claim was denied initially and upon reconsideration. Plaintiff requested a hearing which was held on April 11, 2007. Thereafter, the ALJ issued a hearing decision on May 21, 2007, finding plaintiff not disabled (Tr. 12-25). Plaintiff then sought review of the ALJ's decision by the Appeals Council, but the Appeals Council denied this request for review in an action dated September 6, 2007, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 4-6). Having exhausted all administrative remedies, plaintiff Durden thereafter filed an action in U.S. District Court seeking review of the Commissioner's decision.

This case is now ripe for review under § 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c)(3). Both parties have consented to the United States Magistrate Judge conducting any and all proceedings herein, including but not limited to the ordering of the entry of judgment. The parties may appeal from this judgment, as permitted by law, directly to the Eleventh Circuit Court of Appeals. 28 U.S.C. § 636(c)(3).

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity. *Ambers v. Heckler*, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

The ALJ concluded that plaintiff Durden did not have any impairments or combination of impairments that have significantly limited or are expected to significantly limit the ability to perform basic work-related activities for 12 consecutive months, concluding that plaintiff did not have any "severe" impairments or combination of impairments and was therefore not disabled.

Plaintiff began seeing Dr. Fondal with complaints of joint pain and swelling on November 22, 2002. (Tr. 271) She had blood tests conducted by Quest Diagnostics in June of 2002 and received a positive ANA screen. (Tr. 218). The reports stated that antibodies for RNP had been detected and such findings are consistent with mixed connective tissue disease (MCTD) and rheumatoid arthritis. (Tr. 216). The report further stated that the presence of RNP antibodies and the absence of SM and DS DNA antibodies strongly suggest mixed connective tissue disease (MCTD).

On February 28, 2003, Plaintiff went in for a radiology report, and the report showed non-specific findings of soft tissue swelling in her left hand (Tr. 140). The report was otherwise negative and showed no abnormalities (Tr. 140). A chest x-ray taken the same day (Tr. 142) showed a borderline cardiac silhouette, but it was otherwise negative and demonstrated no interstitial lung disease (Tr. 142).

Dr. Boddie indicated Plaintiff had gone to the emergency room on March 20, 2003 for a sore throat and shortness of breath. A urinalysis performed that day showed a high glucose, high protein, and high specific gravity, but all other values were negative or normal (Tr. 176). As the ALJ indicated, a pelvic sonogram taken March 27, 2003 revealed no evidence of free fluid or pelvic mass (Tr. 14, 175).

On March 30, 2003, Plaintiff Durden visited the Oconee Regional Medical Center with complaints of nausea, weakness, and a sore throat (Tr. 136). Her constitution was listed as "normal" (Tr. 138). As the ALJ discussed, a lumbar x-ray taken April 24, 2003 showed mild scoliosis with no disc disease or fracture (Tr. 14, 168). Plaintiff had a follow up visit to Dr. Boddie on April 28, 2003, and Dr. Boddie indicated she was "hyperlipish," with rheumatoid arthritis and mild scoliosis (Tr. 167).

On May 27, 2003, Plaintiff visited the Oconee Regional Medical Center for flank and low back pain (Tr. 130). Her radiology report was negative (Tr. 14, 134, 166). The attending physician gave Plaintiff some prescription pain medications and released her (Tr. 130-31). Plaintiff submitted a copy of a June 27, 2003 "Request for Disability Information" from the Georgia Employee's Retirement System signed by Dr. Boddie (Tr. 49-51). The request indicated that she had a slowly deteriorating condition involving lupus and rheumatoid arthritis which had not improved with medication and therapy (Tr. 50-51).

Plaintiff was admitted to the Oconee Regional Medical Center during the period of August 6, 2003 through August 9, 2003 (Tr. 143-49). Upon admission, she was diagnosed with "Rheumatoid Arthritis, Recently taken off of Prednisone" (Tr. 143). Her chest x-ray was negative (Tr. 146). During her hospitalization, Plaintiff improved on medication (Tr. 143-45). In an August 11, 2003 follow-up from her hospital visit, her urinalysis showed some elevated values and traces of abnormalities in some of the values, but most of the items tested were either negative or normal (Tr. 164). Dr. Boddie planned to taper Plaintiff off Prednisone (Tr. 165).

On March 3, 2004, Plaintiff's blood work demonstrated that she had high cholesterol (Tr. 160). Dr. Boddie indicated Plaintiff had hemorrhoids and RA glucose (inhaler?) (Tr. 163). On March 15, 2004, Plaintiff underwent a pulmonary function test, and the report showed only a "mild" restrictive defect (Tr. 155). Other aspects of the test were normal (Tr. 155-58).

In April of 2004, Plaintiff reported to Oconee Regional with back pain. (Tr. 168). X-rays were obtained of the lumbar spine. (*Id.*) Dr. Boddie found that the symptoms were due to mild scoliosis of the lumbar spine. (*Id.*). Ms. Durden again reported to Middle Georgia Arthritis Center in November of 2004. (Tr. 259-271). Following several visits for generalized joint pain, Dr. Fondal performed an arthrocentesis of the right knee and again diagnosed her with diffuse disease of connective tissue. (*Id.*).

On June 23, 2004, Plaintiff Durden visited Dr. Boddie with complaints of an inability to use her hands, and Dr. Boddie prescribed a Prednisone taper (Tr. 154). Plaintiff underwent a sedimentation test on June 24, 2004, and the results were within the normal range (Tr. 152).

Plaintiff visited Dr. Fondal on August 11, 2004 with complaints of pain, mostly in her hands and wrists (Tr. 266). Plaintiff's tests, including neurological tests, were negative (Tr. 266), and the examination of Plaintiff's joint including her wrists was normal (Tr. 267). Plaintiff had full range of motion in both wrists (Tr. 267). An August 26, 2004 report from Dr. Miguel Ziaita, M.D. indicated findings consistent with a bilateral carpal tunnel syndrom (Tr. 256-57), but he assessed no limitations on account of this condition (Tr. 256-57).

In a September 28, 2004 visit to Dr. Fondal, Plaintiff complained of medical problems including carpal tunnel syndrome, but the doctor indicated they could not confirm Plaintiff's carpal tunnel because they did not have test results on her chart (Tr. 262). The tests performed on Plaintiff, including neurological tests, were negative (Tr. 262). Examinations of her joints were normal, and she had full range of motion in her wrists and hands (Tr. 263). In a November 30, 2004 office visit to Dr. Fondal, Plaintiff had multiple subjective complaints, but just as in past examinations, her examination revealed mostly negative or normal results (Tr. 259-60).

On January 30, 2006, Dr. Boddie completed a Residual Functional Capacity Questionnaire (RFC). (Tr. at 272). She opined that Plaintiff Durden suffered from rheumatoid arthritis as well as lupus and connective tissue disorder. (*Id.*) She further stated that psychological conditions including depression and anxiety would affect the client's physical condition. (Tr. 273). Dr. Fondal stated that the claimant could only sit 2 hours and stand/walk 2 hours out of an eight hour day. She stated that the claimant would constantly experience pain or fatigue that would be severe enough to interfere with attention and concentration and that she would be absent more than four days a month due to her impairments. (Tr. 272-275).

5

At the request of the ALJ, Plaintiff was sent for a psychological evaluation on August 17, 2006. The consulting examiner, Dr. Kusuma S. Rao, opined that Plaintiff suffers from major recurrent and severe depression. (Tr. 289). In determining Plaintiff's abilities to make occupational adjustments the consultative examiner determined that she would have only fair abilities to follow work rules and use judgment.(Tr. 290- 291). The examiner further assessed the claimant as having poor abilities as it related to dealing with co-workers, dealing with the public, interacting with supervisors, dealing with work stress, functioning independently and maintaining attention and concentration. *(Id.)* In addition to the aforementioned limitations, Dr. Rao stated in his summary that Plaintiff "has come down from the high functioning level of her lifestyle to lowest level not only because of the extraordinary situation of limitation physically and emotionally but also untreated depression and counseling that is very much needed to help patient to get through her chronic nature of the medical condition." (Tr. 289).

Additionally, the ALJ had a Medical Expert (ME) testify at two of Plaintiff's hearings.

*"Severe" Impairments*

Plaintiff Durden asserts that the ALJ failed to make a proper severity determination at step two regarding any of her impairments. At step two in this analysis, a plaintiff must show that she has a severe impairment or combination of impairments that meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii). The impairment of combination of impairments must not only be severe at step two, but they must also meet the duration requirement found in section 404.1509. See 20 C.F.R. § 404.1520(a)(4)(ii) (impairment must meet the duration requirement in 20 C.F.R. § 404.1509). Under section 404.1509, an impairment must be expected to result in death, or last or be expected to last 12 continuous months. See 20 C.F.R. § 404.1509.

The Eleventh Circuit characterizes a plaintiff's burden at step two as a mild, threshold inquiry. See *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Under this standard, an impairment is non-severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with a plaintiff's ability to work *See id*.

The ALJ accepted the testimony of Dr. Brovender, who did not examine plaintiff but only reviewed her medical records, that there was no objective evidence substantiating the existence of carpal tunnel syndrome, low back pain, rheumatoid arthritis, or fibromyalgia. In so doing, the ALJ completely discounted the opinions of Plaintiff's treating and consulting physicians.

The undersigned has also reviewed the medical record, and finds that there are objective indicators of some of Plaintiff's subjective complaints. As summarized above, Plaintiff had blood tests conducted by Quest Diagnostics in June of 2002 and received a positive ANA screen. (Tr. 218). The reports stated that antibodies for RNP had been detected and such findings are consistent with mixed connective tissue disease (MCTD), and rheumatoid arthritis. (Tr. 216). The report further stated that the presence of RNP antibodies and the absence of SM and DS DNA antibodies strongly suggest MCTD. (*Id*).

These reports, and the medication that Plaintiff had been taking for years for the condition, Prednisone and Plaxenill, provide some evidence, in contradiction to the testimony of Dr. Brovender, who stated that "she's on Plaxenill and Prednisone, but there's nothing in the record that they have a biopsy or proof that she had it." (Tr. at 346). In turn, these objective findings could substantiate other objective medical evidence that was rejected in the ALJ's decision, as well as Plaintiff's own testimony regarding her subjective complaints of pain and other symptoms. In the view of the undersigned, it was error for the ALJ to fail to consider these objective findings in determining whether Plaintiff had a "severe" impairment.

*Treating Physicians*

Plaintiff Durden assigns as error the failure to the ALJ to give proper weight to the opinions of her treating physician, Dr. Boddie, and consulting psychiatrist, Dr. Rao. The regulations permit the ALJ to obtain medical expert (ME) testimony. *See* 20 C.F.R. § 404.1527(f)(2)(iii).

Francis B. Buda, M.D., testified at Plaintiff's second hearing (Tr. 68-70, 314-20). Dr. Buda stated that he had reviewed the available medical evidence, and that there was a tremendous difference between Plaintiff's complaints and the positive physical findings (Tr. 316). Dr. Buda indicated that Plaintiff might have a severe mental impairment based on Exhibit 8F (Tr. 317, 318, see Tr. 273). Dr. Buda recommended Plaintiff undergo a consultative psychological examination (Tr. 319). As for the remainder of the record, Dr. Buda testified that Plaintiff exhibited problems at times, but that none of her impairments met regulatory 12-month duration requirement (Tr. 320).

At the fourth hearing, the ALJ obtained testimony from another ME, Dr. Arthur Brovender, M.D. (Tr. 13, 79-81, 343-48). Dr. Brovender reviewed the available medical record and testified that Plaintiff's low back problems and carpal tunnel syndrome were not severe (Tr. 345). He also testified there were no objective tests to prove that Plaintiff had rheumatoid arthritis or fibromyalgia (Tr. 346). The ALJ relied on Dr. Brovender's opinion that Plaintiff had no severe physical impairments (Tr. 14).

The ALJ followed ME Buda's advice and ordered a consultative psychological examination for Plaintiff. On August 17, 2006, Dr. Kusma S. Rao, M.D. reviewed medical records and conducted a mental status examination (Tr. 288-89). Dr. Rao diagnosed depression, rheumatoid arthritis, carpal tunnel syndrome, fibromyalgia, high blood pressure, and marginal right eye blindness (Tr. 289). He also completed a "Medical Assessment of Ability to do Work-Related Activities (Mental)" in which he indicated Plaintiff was seriously limited, but not precluded in eleven areas of work-related functioning (Tr. 290-92). Dr. Rao indicated his assessment was based in part on severe physical limitations and pain (Tr. 290-92).

The ALJ discounted Dr. Rao's report and opinion (Tr. 14). The ALJ noted that Dr. Rao was a one-time consultative physician (Tr. 14).   Plaintiff did not provide an opinion from her own psychiatrist or psychologist because she never sought mental health treatment.  As the ALJ also correctly indicated, Dr. Rao's diagnoses of physical conditions were based entirely on Plaintiff's subjective statements to him and not on supporting evidence (Tr. 14, 288-89).

However, the undersigned believes it was improper to completely discount Dr. Rao's opinion regarding Plaintiff's mental status based upon the reasons stated by the ALJ.  While Dr. Rao is a one-time examiner, the reasons stated by the ALJ— that Dr. Rao's opinion was based entirely on what Plaintiff told him— would be true of every other psychological or psychiatric consultative exam regarding depression.

### *Failure to Develop the Record*

Plaintiff Durden assigns as error the failure of the ALJ to order a consultative examination regarding her physical impairments, thereby failing to develop the record and requiring reversal.

As pointed out by the Plaintiff, the ALJ held four hearings on this matter and sought the testimony of two medical experts in two of the hearings.  In his apparent frustration, the ALJ himself stated, "I also shoulda sent it out for a orthopedic CE, and then perhaps I wouldn't be in this. . .". (Tr. at 337).

9

*Conclusion.*

The evidence necessary to make a fair determination in this case apparently was not sufficient and caused confusion to not only the ALJ, but also the medical experts as is evidenced by their testimony and the comment by the ALJ.  In light of this confusion, a consultative physical examination would have been appropriate.

In light of the foregoing, IT IS ORDERED AND DIRECTED that the Commissioner's decision be **REVERSED AND REMANDED** pursuant to Sentence Four of § 405 (g) for further consideration.

SO ORDERED AND DIRECTED, this 26th day of MARCH, 2010.



    CLAUDE W. HICKS, JR.
    UNITED STATES MAGISTRATE JUDGE

msd